UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL ACTION NO. 2:15-CR-239 |
| § | |
| MANUEL MONTEMAYOR § | |

## ORDER ON MOTION TO SUPPRESS

Defendant, Manuel Montemayor (Montemayor), has been indicted as a felon in possession of a firearm and ammunition (D.E. 1) after police were called to his home for a domestic violence incident and the gun and ammunition were found in Montemayor's vehicle inside a backpack. Before the Court is Montemayor's Motion to Suppress Evidence (D.E. 14), along with the Government's response (D.E. 20). Montemayor argues that his wife did not have authority to consent to the search of his vehicle and backpack. For the reasons set out below, the Motion is DENIED.

## FACTS

Montemayor and his wife, Monica Banuelos (Banuelos), had a history of domestic violence calls to the police. Officer Michael Munoz was somewhat familiar with Montemayor, having responded to a domestic violence call from Banuelos approximately one month prior to the November 30, 2014 incident in this case. While Montemayor had not been there when Officer Munoz arrived for that call, he returned to the home before Officer Munoz left. Officer Christopher Alejandro had also had a prior experience at the home, having responded to another domestic violence call within six months prior to the

November 30, 2014 incident. However, Montemayor had left the home before Officer Alejandro arrived and did not return until after he left.

Montemayor chose not to testify at the suppression hearing and Banuelos invoked her marital privilege against testifying. Consequently, the evidence is largely undisputed.

On the night of November 30, 2014, police received a 911 emergency call from Montemayor's daughter, in which she stated that Montemayor was beating his wife, herself, and her younger brother and had threatened their lives. When asked whether Montemayor had a weapon, the daughter stated that he did not need one, that he could still kill them and had threatened to do so. When Officer Munoz and Officer Krystal Rodriguez arrived, Montemayor and Banuelos were in their front yard arguing. Montemayor was particularly agitated, leaning against a pickup truck in the driveway and yelling, while Banuelos was seated on a mattress.

Upon initial investigation, Officers Munoz and Rodriguez learned that Montemayor and Banuelos had a disagreement over the food for that night's dinner, which had escalated into either Banuelos throwing Montemayor out of the house or Montemayor leaving voluntarily. At any rate, Montemayor was gathering up things to take with him, including the couple's mattress, which had prompted a scuffle.

As is standard procedure in such cases, Officers Munoz and Rodriguez separated the two by placing Montemayor into the back of their patrol car. While he was not handcuffed, Montemayor could not exit the vehicle unless someone opened the door from the outside. Banuelos told the officers that she was not comfortable cooperating with them while Montemayor was looking on because he would retaliate against her. So

Officer Munoz drove his patrol unit, with Montemayor still in the back, around a corner and out of sight. But they remained nearby. At about that time, Officer Alejandro arrived.

Banuelos stated that she was in fear for her life because Montemayor had a gun and she was afraid he would come back and retaliate against her. He had threatened her with the gun before. When the officers asked if she knew where the gun was, she said that it was in a black Jansen backpack in their bedroom closet. Based on her statements and demeanor, the officers believed she wanted the gun removed so that Montemayor could not use it against her. As confirmed by Officer Rodriguez's body camera and Officer Alejandro's audio recorder, Banuelos consented to the officers coming into the home. She directed them to the bedroom closet, but the backpack was not there, where Banuelos had last seen it. Banuelos then remarked that Montemayor must have already put it in "his truck" as he was packing up his things to leave.

As the officers exited the home, Officer Rodriguez asked Banuelos who the truck belonged to and whether they could look inside. She responded that it was registered in her name. She was not sure where the truck's keys were, but the truck was unlocked. The officers saw the backpack through the window and Banuelos stated that was the backpack where the gun was.

The officers believed that they had consent to search the vehicle from an authorized person because: (a) they knew from prior experience that Montemayor and Banuelos were married; (b) the couple lived together at that address; (c) married couples often jointly own two vehicles, but refer to one as "his" and one as "hers;" (d) they

believed Banuelos when she said that the truck was registered in her name; (e) the truck was parked in their driveway; and (f) access to the truck was unrestricted.

They called in the license plate of the truck to the police department, but were not in their patrol units to receive any responsive information before completing the search. They did not seek or obtain a search warrant. They did not seek or obtain Montemayor's consent to search the truck or the backpack. Instead, with the consent of Banuelos and commenting that it was good that they were about to find the gun in "his truck" (meaning that it would be better for the prosecution of a felon in possession of a firearm charge against Montemayor), they proceeded to open the truck, pull out the backpack, and look inside. They discovered the handgun and two boxes of ammunition, along with pieces of mail addressed to Montemayor.

Montemayor was arrested and taken into custody. When Officer Rodriguez filled out the police report, she referred to Banuelos giving consent to search "his truck." Evidence obtained in the course of this proceeding indicates that, while the truck at issue was registered only in the name of Montemayor, Banuelos and Montemayor were legally married, both lived at the address where the incident took place, both had signed the financing for the truck and both are listed as insureds for the truck. Additionally, Banuelos has operated the truck in the past. At no time during this incident did Montemayor seek to secure the truck and he did not have the keys on his person.

## DISCUSSION

Montemayor has filed his Motion to Suppress Evidence, invoking rights under Federal Rule of Criminal Procedure 41(h), along with the Fourth, Fifth, and Sixth

Amendments to the United States Constitution. Searches undertaken without a warrant issued on probable cause are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The exception at issue here is the actual or apparent authority of a third party to consent to search of a vehicle and a backpack located in the vehicle.

It is the Government's burden to prove by a preponderance of the evidence that the third party had authority to consent and the consent was voluntary. *United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir. 1997). The voluntariness of Banuelos's consent is not at issue. So the inquiry here is directed to her authority to consent. A "finding of actual authority requires proof that the consenting party and the party challenging the search 'mutually used the property searched and had joint access to and control of it for most purposes.'" *United States v. Jaras*, 86 F.3d 383, 389 (5th Cir. 1996); *see also United States v. Solis*, 299 F.3d 436 (5th Cir. 2002).

While Montemayor focuses on Banuelos not knowing where the keys were at the time, and that record title is in Montemayor's name and not Banuelos's name, a preponderance of the evidence of the facts, both apparent to the officers at the time and revealed in later investigation, shows that Banuelos had joint access and control over both the vehicle and the backpack:

- Banuelos was and remains Montemayor's wife;
- Banuelos and Montemayor lived together at the address to which the officers responded;

- Banuelos claimed that title was registered in her name and the officers believed her, although that was later disproven;

- Banuelos was a co-owner of the truck, as one who signed the note to finance its purchase;

- Banuelos was a named insured on the automobile insurance policy with State Farm Insurance;

- Banuelos had operated the truck before when she needed to;

- The truck was parked in the driveway of the home occupied by Banuelos and Montemayor;

- Banuelos knew that Montemayor kept a handgun in the backpack;

- Banuelos knew where Montemayor ordinarily kept the backpack when it was in their home—in their jointly used bedroom closet;

- Montemayor did not attempt to hide the backpack from Banuelos, either when it was inside the home or inside the truck;

- Montemayor had threatened Banuelos with the handgun, thus relinquishing any expectation of privacy;

- Montemayor had not locked the truck during the altercation, had not locked it when the officers arrived, and did not request that it be locked when he was driven out of view of the truck.

There was no evidence that Montemayor attempted to restrict access to the backpack or the truck. The totality of the circumstances supports a determination that Banuelos had

actual or apparent authority to consent to the officers' search of the vehicle and the backpack.

"[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170 (1974). More specifically, when a defendant allows a third party to have access to a bag and leaves that bag in premises controlled in whole or in part by that third party, the defendant has assumed the risk that the third party would allow others to look in the bag. *Id*. at 171 (citing *Frazier v. Cupp*, 394 U.S. 731, 740 (1969) (involving a duffle bag shared with a cousin)). *See also, United States v. Shelton*, 337 F.3d 529, 535-36 (5th Cir. 2003) (defendant's wife had free access to the house and knew where the incriminating evidence was hidden, even though she had moved out in response to defendant's infidelities; she maintained authority to consent to a search even after moving out because defendant did nothing to restrict her access or resurrect an expectation of privacy).

The facts here do not fit Montemayor's proffered authorities finding a lack of authority to consent. This is not like the situation in *United States v. Salinas-Cano*, where a girlfriend did not have authority to consent to a search of her boyfriend's (defendant's) luggage. 959 F.2d 861, 865-66 (10th Cir. 1992). The girlfriend claimed no ownership interest in the suitcase or its contents and did not claim any familiarity with it. *Id*. The same type of facts distinguish the holding in *Jaras*, 86 F.2d at 389, in which an accomplice who drove the car did not have authority to consent to a search of luggage in the trunk when he had no ownership or control over luggage in the trunk. *See also,*

*United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993) ("there is simply nothing in the record demonstrating that McGee had use of, let alone joint access to or shared control over, Welch's purse").

Here, Montemayor had demonstrated to Banuelos that he had a gun, that he kept it in the backpack, that he ordinarily placed the backpack in their joint closet in plain view where Banuelos could have unrestricted access, and that he did not try to hide it when he put the backpack in the unlocked truck owned by both of them.  The Court FINDS that Banuelos had actual or apparent authority to consent to the search of the truck and the backpack.

Alternatively, the search does not offend the Fourth Amendment if the officers reasonably believed that they had effective consent.  *Gonzales*, 121 F.3d at 938 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)).  The test is an objective one:  whether a person of reasonable caution would believe that the consenting party had authority over the premises.  *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).  Even if mistaken, a search is constitutional if the officers held an objectively reasonable, good-faith belief that they had obtained valid consent to search.  *E.g.*, *United States v. Brazel*, 102 F.3d 1120, 1148 (11th Cir. 1997) (citing *Illinois v. Rodriguez, supra*); *United States v. James*, 353 F.3d 606, 615 (8th Cir. 2003) (same).

Montemayor argues that, because both Banuelos and the officers referred to the truck as "his truck," they could not have reasonably believed that Banuelos had apparent authority to consent to its search; they believed that the truck belonged only to Montemayor.  The Court disagrees.  As Officer Alejandro testified, it is not unusual for

married couples with two vehicles owned jointly by them to refer to the one primarily used by the husband as "his" and the one used primarily by the wife as "hers," even though both have access to each other's vehicles for all intents and purposes. The Court FINDS after review of all of the evidence that the officers reasonably believed that Banuelos had authority to consent to their search of the pickup truck and the backpack found inside of it.

## CONCLUSION

For the reasons set out above, the Court FINDS that Banuelos had actual authority to consent to the search, that she had apparent authority to consent, and that Officer Alejandro and Officer Rodriguez reasonably believed that they had consent to perform the search. The Court DENIES the motion to suppress (D.E. 14).

ORDERED this 25th day of August, 2015.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE